CN: 2020225332

**SN: 1**

PC: 20

```
┌─────────────────────────────┐
│            FILED            │
│        AUG 1 8 2020         │
│    Timothy W. Fitzgerald    │
│    SPOKANE COUNTY CLERK     │
└─────────────────────────────┘
```

SUPERIOR COURT OF WASHINGTON IN AND FOR SPOKANE COUNTY

ANTONIA TOMBARI, an individual, and
TROY BRUNER, an individual

                       Plaintiffs,

   v.

STATE OF WASHINGTON, by and through
the WASHINGTON STATE DEPARTMENT
OF CORRECTIONS, a Washington State
Agency; CATHI HARRIS, an individual; JIM
RILEY, an individual; MEGAN SMITH, an
individual; RENEE SCHUITEMAN, an
individual; and KRISTOPHER SMITH, an
individual,

                       Defendants.

NO. **20 202253-32**

SUMMONS

TO: THE ABOVE-MENTIONED DEFENDANTS:

    A lawsuit has been started against you in the above-entitled Court by Antonia Tombari

and Troy Bruner ("Plaintiffs"). Plaintiffs' claims are stated in the written Complaint, a copy of

which is served upon you with this Summons.

    In order to defend against this lawsuit, you must respond to the Complaint by stating

your defense in writing, and by serving a copy upon the person signing this Summons, within

twenty (20) days after the service of this Summons, excluding the day of service. If this

SUMMONS: 1

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

8/18/20

**EXHIBIT B**

1  Summons is served upon you outside of Washington state, you must respond to the Complaint

2  by stating your defense in writing, and by serving a copy upon the person signing this

3  Summons, within sixty (60) days after the service of this Summons, excluding the day of

4  service, or a default judgment may be entered against you without notice. A default judgment

5  is one where Plaintiffs are entitled to what they ask for because you have not responded. If you

6

7  serve a Notice of Appearance on the undersigned person, you are entitled to notice before a

8  default judgment may be entered.

9      You may demand that Plaintiffs file this lawsuit with the Court. If you do so, the

10  demand must be in writing and must be served upon the person signing this Summons. Within

11  fourteen (14) days after you serve the demand, Plaintiffs must file this lawsuit with the Court,

12  or the service on you of this Summons and Complaint will be void.

13

14      If you wish to seek the advice of an attorney in this matter, you should do so promptly

15  so that your written response, if any, may be served on time.

16      This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the

17  State of Washington.+

18

19      DATED this 18th day of August, 2020.

20                          LUKINS & ANNIS, P.S.

21

22                          By _____
                               MICHAEL A. MAURER, WSBA # 20230
23                             CHARLES HAUSBERG, WSBA # 50029
                               COURT A. HALL, WSBA # 54016
24                             Attorneys for Plaintiffs

25

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

SUMMONS: 2

8/18/20

```
                                    ┌─────────────────────────┐
                                    │         FILED           │
                                    │                         │
                                    │      AUG 1 8 2020        │
                                    │                         │
                                    │   Timothy W. Fitzgerald  │
                                    │  SPOKANE COUNTY CLERK    │
                                    └─────────────────────────┘
```

SUPERIOR COURT OF WASHINGTON IN AND FOR SPOKANE COUNTY

ANTONIA TOMBARI, an individual, and
TROY BRUNER, an individual

                         Plaintiffs,

    v.

STATE OF WASHINGTON, by and through
the WASHINGTON STATE DEPARTMENT
OF CORRECTIONS, a Washington State
Agency; CATHI HARRIS, an individual; JIM
RILEY, an individual; MEGAN SMITH, an
individual; RENEE SCHUITEMAN, an
individual; and KRISTOPHER SMITH, an
individual,

                         Defendants.

NO. **20 202253-32**

COMPLAINT

Plaintiffs, by and through their counsel of record, Lukins & Annis, P.S., and for cause

of action against Defendants, allege as follows:

## I. PARTIES

    1.1    Plaintiff Antonia Tombari ("Ms. Tombari"), is an individual residing in Spokane

County, Washington.

    1.2    Plaintiff Troy Bruner ("Dr. Bruner") is an individual residing in Spokane

County, Washington.

COMPLAINT: 1

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICES CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

01897185.3  8/18/20

1     1.3     Defendant State of Washington is a governmental body and at all times material

2   hereto the Defendant Washington State Department of Corrections ("DOC") was an agency of

3   the State of Washington, including for the purposes of RCW 4.92.100.

4     1.4     Upon information and belief, Defendant Renee Schuiteman ("Ms. Schuiteman")

5   is an individual residing in Spokane County, Washington.  At all times pertinent to this action,

6   Ms. Schuiteman was operating in her individual capacity and official capacity on behalf of

7   DOC.

8     1.5     Upon information and belief, Defendant Kristopher Smith ("Mr. Smith") is an

9   individual residing in Spokane County, Washington.  At all times pertinent to this action, Mr.

10   Smith was operating in his individual capacity and official capacity on behalf of DOC.

11     1.6     Upon information and belief, Defendant Cathi Harris ("Ms. Harris") is an

12   individual residing in Thurston County, Washington.  At all times pertinent to this action, Ms.

13   Harris was operating in her individual capacity and official capacity on behalf of DOC.

14     1.7     Upon information and belief, Defendant Jim Riley ("Mr. Riley") is an individual

15   residing in Spokane County, Washington.  At all times pertinent to this action, Mr. Riley was

16   operating in his individual capacity and official capacity on behalf of DOC.

17     1.8     Upon information and belief, Defendant Megan Smith ("Ms. Megan Smith") is

18   an individual residing in Spokane County, Washington.  At all times pertinent to this action,

19   Ms. Smith was operating in her individual capacity and official capacity on behalf of DOC.

20     1.9     Defendants Ms. Schuiteman, Mr. Smith, Ms. Harris, Mr. Riley, and Ms. Megan

21   Smith are collectively referred to herein as the "Individual Defendants".

22     1.10     At the time of the conduct described herein, Individual Defendants were

23   employees/agents/representatives of DOC and were acting within the course and scope of their

24   employment.

25   //

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

COMPLAINT: 2

## II. JURISDICTION AND VENUE

2.1    Plaintiffs re-allege the preceding paragraphs as though fully set forth herein.

2.2    This Court has original jurisdiction over this matter pursuant to RCW 2.08.010.

2.3    Jurisdiction and venue are proper in Spokane County, Washington, pursuant to RCW 4.12.020 because, *inter alia*, the facts, claims, and causes of action described herein arose in Spokane County, Washington.

## III. FACTS

3.1    Plaintiffs re-allege the preceding paragraphs as though fully set forth herein.

3.2    Plaintiffs submitted tort claims pursuant to RCW 4.92.100 more than 60 days prior to filing and serving this Complaint.

3.3    Ms. Tombari began working as a sex offender treatment specialist for DOC in May of 2017, working in the Sex Offender Treatment and Assessment Program. She worked at the Airway Heights Corrections Center ("AHCC") in Spokane County, Washington. Ms. Tombari's job was protected by, *inter alia*, state law and a collective bargaining agreement. As a result of these protections and among other things, Ms. Tombari's employment could only be terminated for just cause and only if the DOC and its employees followed certain pre-termination procedures and afforded Ms. Tombari sufficient procedural protections and rights.

3.4    Dr. Bruner began working as a psychologist for DOC in December of 2016, working in the Sex Offender Treatment and Assessment Program. He worked at the AHCC in Spokane County, Washington. Dr. Bruner's job was protected by, *inter alia*, state law and a collective bargaining agreement. As a result of these protections and among other things, Dr. Bruner's employment could only be terminated for just cause and only if the DOC and its employees followed certain pre-termination procedures and afforded Dr. Bruner sufficient procedural protections and rights.

COMPLAINT: 3

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

01897185.3 8/18/20

1    3.5     At all times relevant herein, the Sex Offender Treatment and Assessment

2    Program at AHCC was supervised by Renee Schuiteman. Accordingly, Ms. Schuiteman

3    oversaw the entire program at AHCC and was responsible for supervising and managing its

4    employees and staff, including Plaintiffs, and making personnel decisions.

5    3.6     At all times relevant herein, Kristopher Smith was a supervising sex offender

6    treatment specialist, who functioned as a supervisor to Ms. Tombari.

7    3.7     At all times relevant herein, Jim Riley was a supervisor in Human Resources at

8    AHCC, who handled HR matters pertinent to Ms. Tombari and Dr. Bruner.

9    3.8     At all times relevant herein, Megan Smith was a Diversity and Inclusion

10   Consultant at DOC, who handled HR matters pertinent to Ms. Tombari and Dr. Bruner.

11   3.9     At all times relevant herein, Cathi Harris was DOC's director of the Sex

12   Offender Treatment and Assessment Program for the entire state of Washington and, in that

13   role, oversaw the work of the program's employees and staff. Ms. Harris had responsibilities

14   that included supervising and managing personnel—including Plaintiffs.

15   **MS. TOMBARI**

16   3.10    The sex offender treatment specialists, like Ms. Tombari, were each responsible

17   for the treatment of several incarcerated individuals/clients ("clients"), which included group

18   therapy sessions.

19   3.11    Almost immediately after starting her job, Ms. Tombari began to notice

20   problems with the Sex Offender Treatment and Assessment Program at AHCC. When she

21   notified her supervisors, including Ms. Schuiteman and Mr. Smith, she was silenced,

22   mistreated, or subject to other adverse consequences and repercussions. For example, she

23   observed that a client in the program was not receiving the proper course of treatment. When

24   she mentioned this to her supervisors, her observation and suggestion for the client's proper

25

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

COMPLAINT: 4

1    care was dismissed and disregarded. Ms. Tombari's observation and suggestion for correct

2    clinical treatment was subsequently held against her by her supervisors.

3         3.12    In another instance, Ms. Tombari began sitting in on group sessions facilitated

4    by another specialist. Ms. Tombari noticed several problems with the treatment that the clients

5    had been receiving, something that became even clearer once Ms. Tombari took over this

6    particular group. Most notably, certain individuals who were on the verge of completing the

7    program (and thus getting closer to being released into the community) were still exhibiting

8    concerning behavior that warranted, among other things, their dismissal from the Sex Offender

9    Treatment and Assessment Program. Ms. Tombari told her supervisors about this. Mr. Smith

10    instructed Ms. Tombari to refrain from documenting these problems in the clients' notes. Ms.

11    Tombari refused this direction, which was against policy, unethical, and antithetical to the

12    objectives of the Sex Offender Treatment and Assessment Program.

13         3.13    When Ms. Tombari asked other specialists why individuals who were not fit for

14    treatment were on the verge of graduating from the program, the other specialists said that it

15    was Ms. Schuiteman's instruction to get offenders through the program—even those who were

16    not qualified for or amenable to treatment. Ms. Tombari subsequently raised this issue with her

17    supervisors, as well, telling them that their supervision of specialists needed to change so that

18    this did not happen again. Ms. Tombari stated that this was an issue of proper management of

19    the program and its specialists.   In fact, on information and belief, none of the supervisors and

20    managers at AHCC had the same licensure and credentials as the specialists that they were

21    supervising.

22         3.14    Ms. Schuiteman and Mr. Smith then told Ms. Tombari not to tell anyone else

23    about her concerns regarding their supervision and management of the program. When Ms.

24    Tombari said that she wanted to discuss the aforementioned issues with Cathi Harris—the

25    state-wide supervisor of DOC's Sex Offender Treatment and Assessment Program—Ms.

COMPLAINT: 5

LAW OFFICES OF
LUKINS & ANNIS, PS
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

01897185.3 8/18/20

1   Schuiteman and Mr. Smith ordered her not to talk with Ms. Harris and threatened her with

2   termination if she did so.   In other words, Ms. Schuiteman and Mr. Smith sought to prevent

3   Ms. Tombari from speaking up about the problems at the program at AHCC.

4       3.15    Shortly thereafter, Mr. Smith presented Ms. Tombari with a performance

5   improvement plan.  Ms. Tombari took issue with this plan and told Mr. Smith it contained

6   several factual assertions regarding Ms. Tombari's job performance that were fabricated or

7   entirely made up.  Ms. Tombari stated these accusations were simply untrue and the criticisms

8   in the plan unfounded.  Mr. Smith admitted that Ms. Tombari was right and he withdrew the

9   performance improvement plan. (When Ms. Tombari subsequently asked for a copy of this

10  plan, she was told that it no longer existed in any of DOC's files).

11      3.16    Undeterred, Ms. Schuiteman and Mr. Smith then presented Ms. Tombari with a

12  different performance improvement plan, which was still contrived, fabricated, and/or based on

13  falsehoods.

14      3.17    Concerned by Smith's and Schuiteman's conduct, including but not limited to

15  the foregoing performance improvement plan and other intimidating conduct, Ms. Tombari

16  asked to see her employee file so that she could see what documents (if any) were being placed

17  there by Smith and Schuiteman—including those that Smith/Schuiteman might have created to

18  support the contrived performance improvement plan.  Smith and Schuiteman refused to

19  provide Ms. Tombari with her file.  Upon Ms. Tombari's multiple requests for her file and

20  requests to contact Cathi Harris, Smith and Schuiteman ordered other employees to ostracize

21  Ms. Tombari.

22      3.18    Smith took other measures to undermine Ms. Tombari.  For example, he gave

23  her extensions on certain deadlines to file paperwork.  He would then act as if he did not give

24  these extensions and created supervision notes stating that Ms. Tombari failed to meet

25  deadlines.

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

COMPLAINT: 6

1    3.19    Smith and Schuiteman also told Ms. Tombari that other employees were "out to

2  get her" and advocating for her termination.  These comments served to make Ms. Tombari feel

3  isolated, undermined, and unsure about her work environment.

4    3.20    Ms. Schuiteman and Mr. Smith further directed Ms. Tombari to refrain from

5  discussing sex offender treatment with psychologists.  This directive—which essentially

6  amounted to an order that clients not receive more complete treatment—ran counter to the

7  goals and objectives of the sex offender treatment program.

8    3.21    Ms. Schuiteman and Mr. Smith also directed Ms. Tombari that she could not

9  talk to prison guards on watch command, which not only compromised Ms. Tombari's safety at

10  AHCC, but again acted as a hinderance to the proper functioning of the program.

11    3.22    During this time, Ms. Schuiteman and Mr. Smith also called Ms. Tombari into

12  their offices on multiple occasions to interrogate, intimidate, and question Ms. Tombari about

13  various non-work topics—namely Ms. Tombari's personal life.  They also insisted on

14  commenting on Ms. Tombari's appearance.  The interrogations included sensitive and

15  irrelevant questions about Ms. Tombari's family.  In other meetings with Ms. Schuiteman

16  and/or Mr. Smith, they would yell at and berate Ms. Tombari, causing Ms. Tombari to visibly

17  shake and cry.

18    3.23    Next, at a subsequent "team-building" retreat, Ms. Schuiteman solicited

19  constructive criticism from employees.  Ms. Tombari mentioned that several problems with

20  supervision and training were having a negative impact on the program and sex offender

21  treatment.

22    3.24    When Ms. Tombari arrived at work the following day, she found that none of

23  her colleagues or supervisors (or other employees) would talk to her—on Ms. Schuiteman's

24  and Mr. Smith's orders.  Ms. Tombari was informed by another supervisor that this was

25  happening because of Ms. Tombari's comments at the retreat.

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

COMPLAINT: 7

3.25    Ms. Schuiteman and Mr. Smith knew that they had no grounds to terminate Ms. Tombari. They also knew that any attempt to terminate or discharge Ms. Tombari would trigger a process and related procedural protections for Ms. Tombari—a process that would reveal that Ms. Schuiteman and Mr. Smith had committed misconduct and wrongdoing. Therefore, Ms. Schuiteman and Mr. Smith resolved that they would attempt to force Ms. Tombari to quit—a tactic that they had employed in the past with other employees who attempted to do their jobs properly, expressed concerns about the leadership or Schuiteman/Smith, and/or sought to improve the program. During this time, on information and belief, Ms. Harris knew about, supported, and encouraged the bad behavior of Ms. Schuiteman and Mr. Smith.

3.26    All of these actions took a toll on Ms. Tombari, causing her emotional distress that had physical and other objective symptoms and manifestations. Ms. Tombari became severely ill and experienced, among other things, nightmares, insomnia, fevers, extreme fatigue, abnormal weight gain and weight loss, anxiety, hypervigilance, panic attacks, tension headaches, migraines, back pain, and a weakened immune system. Ms. Tombari sought medical treatment for these symptoms and manifestations of her emotional distress. Ms. Tombari also sought mental health treatment for the psychological distress inflicted by Defendants.

3.27    Ms. Tombari then went to human resources to lodge a complaint against Ms. Schuiteman and Mr. Smith. Ms. Harris and the HR Supervisor, Jim Riley, discouraged Ms. Tombari from filing a formal complaint.

3.28    However, at this point, Ms. Tombari had heard that Ms. Schuiteman had been harassing employees, creating a hostile work environment, and "freezing out" employees that wanted to address and correct problems in the Sex Offender Treatment Program for years—and that the DOC and the other Defendants knew about it. Ms. Tombari felt obligated to formally

COMPLAINT: 8

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

01897185.3 8/18/20

complain against Ms. Schuiteman and the other employees who were adversely impacting every aspect of the Sex Offender Treatment and Assessment Program at AHCC. Thus, on or about January 12, 2018, Ms. Tombari filed a formal complaint.

3.29   Upon filing this complaint, Ms. Harris and Mr. Riley instructed Ms. Tombari that she could not go back to work, but instead must report to and stay in human resources where she could not do her job. That is, Ms. Tombari was sequestered in human resources—and not allowed to perform her job—while Ms. Schuiteman and Mr. Smith were allowed to remain on the job. In other words, Ms. Harris and Mr. Riley sought to punish and isolate Ms. Tombari after she filed a complaint that raised serious questions about the sex offender treatment program. The justification given to Ms. Tombari for this sequestration was that it would only be temporary while DOC investigated Schuiteman and Smith.

3.30   Shortly after filing her complaint with DOC, Ms. Tombari filed additional complaints with the State of Washington against Ms. Schuiteman.

3.31   Ms. Harris and Mr. Riley assured Ms. Tombari that her time in human resources would be brief and that she would quickly return to her normal job activities. Ms. Megan Smith was assigned to investigate Ms. Tombari's complaint. However, weeks (and then months) passed, and Ms. Tombari was still told to report to human resources. It turned out that DOC was dragging on its investigation in order to sideline Ms. Tombari indefinitely.

3.32   The effect of Ms. Tombari being sent to human resources meant that, among other things, she experienced a continually uncertain atmosphere. In addition, she was prevented from doing her actual job as a therapist. She had very little actual work to do (if any). In other words, she was sidelined and isolated. As more time passed, Ms. Tombari began to doubt DOC's intentions to return her to her actual job. In reality, Ms. Harris and the other Defendants did not want Ms. Tombari to return to work. They were trying to get her to quietly

COMPLAINT: 9

LAW OFFICES OF
LUKINS & ANNIS, PS
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

01897185.3  8/18/20

1    quit without any formal process (and without exposing the problems occurring in the sex

2    offender treatment program).

3        3.33    In fact, the effect of Ms. Tombari being sequestered was that the group of

4    patients she was working with were re-assigned to a different therapist mid-treatment—

5    something that is not conducive to proper treatment. To make matters worse, Mr. Smith was

6    the therapist who took over her patients.

7        3.34    After being sidelined for months with no indication that DOC was anywhere

8    near resolving her complaint, Ms. Tombari realized that she would never be returned to her job.

9    Ms. Harris even told Ms. Tombari that she would have no clients or actual work to do. Ms.

10   Tombari was also convinced DOC was never going to do anything about Ms. Schuiteman and

11   Mr. Smith—a message sent by DOC's refusal to complete their investigation. Finally, Ms.

12   Tombari was still suffering from the emotional distress inflicted by Schuiteman and Smith, and

13   this distress was further exacerbated by DOC's decision and actions of Ms. Harris, Mr. Riley,

14   and Ms. Megan Smith that resulted in Ms. Tombari being sidelined indefinitely. That is, Ms.

15   Tombari was subjected to an intolerable environment and felt that she had no choice but to

16   tender her resignation. This was done by all of the named Defendants in order to force Ms.

17   Tombari to quit—and to do so without any formal termination-related process/procedure,

18   without Ms. Tombari availing herself of her pre-termination procedural rights as a state/public

19   employee, without completing investigations, without exposing the problems within the sex

20   offender treatment program, and without properly investigating Ms. Tombari's complaints and

21   problems with the Sex Offender Treatment Program at AHCC.

22       3.35    Upon tendering her resignation, Ms. Harris seemed happy and was overly-

23   supportive of Ms. Tombari's decision. This was likely because Defendants' strategy of forcing

24   out Ms. Tombari had succeeded. What is more, Defendants had succeeded in forcing out Ms.

25   Tombari while avoiding making the necessary wholesale changes to the Sex Offender

COMPLAINT: 10

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

1   Treatment and Assessment Program at AHCC.   Defendants had also succeeded in forcing out

2   Ms. Tombari without having to afford her any of the procedural protections to which she was

3   entitled if DOC had sought to terminate her.  Ms. Tombari's final day of work was March 16,

4   2018.  The adverse effects of Defendants' conduct, however, continued after Ms. Tombari left

5   DOC.  As a result of Defendants' conduct, Ms. Tombari suffered emotional distress, as well as

6   economic and non-economic damages.

7   **DR. BRUNER**

8       3.36   After beginning his job at the end of 2016, Ms. Schuiteman was initially friendly

9   to Dr. Bruner.  However, she quickly began to treat him improperly and create a hostile

10   environment for Dr. Bruner.  This occurred in several ways and continued for the duration of

11   Dr. Bruner's employment.

12       3.37   After a couple of weeks on the job, Dr. Bruner asked Ms. Schuiteman about the

13   tasks that he was to perform and put on his schedule.  Ms. Schuiteman declined to give Dr.

14   Bruner any responsibilities or allow him to do any work.  Remarkably, Ms. Schuiteman then

15   reported Dr. Bruner to Ms. Harris, accusing Dr. Bruner of being aggressive and demanding in

16   seeking work.  Dr. Bruner informed Ms. Harris that Ms. Schuiteman's report was false.  On

17   information and belief, Ms. Harris did nothing to inquire into Ms. Schuiteman's false report.

18       3.38   Dr. Bruner ultimately took on various roles.  Among them, he was to be

19   involved in interviewing prospective employees.  However, after Dr. Bruner ranked a candidate

20   differently than Ms. Schuiteman, Ms. Schuiteman took actions to prevent Dr. Bruner from

21   participating in any further interviews.

22       3.39   Ms. Schuiteman also excluded Dr. Bruner from key activities in the Sex

23   Offender Treatment Program that prevented Dr. Bruner from performing his assigned job.  For

24   example, Ms. Schuiteman excluded Dr. Bruner from termination hearings for sex offenders.

25

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

COMPLAINT: 11

1  She excluded Dr. Bruner from difficult case consultations, another part of Dr. Bruner's job

2  description.

3          3.40    Ms. Schuiteman frequently took action to undermine Dr. Bruner—including by

4  notifying him of important events/meetings with little-to-no notice. Ms. Schuiteman would

5  also fail to respond to Dr. Bruner's written inquiries, including inquiries about accessing

6  records necessary to do his job. This was done with the aim of, *inter alia*, making Dr. Bruner

7  appear incompetent.

8          3.41    Ms. Schuiteman then made additional false reports to Ms. Harris, accusing Dr.

9  Bruner of performing his job deficiently. These included false accusations that Dr. Bruner did

10  not develop relationships with clinicians and therapists in the Sex Offender Treatment program

11  and the false accusation that Dr. Bruner was not making himself available to staff. Dr. Bruner

12  again reported these accusations as false to Ms. Harris and/or other supervisors at DOC. On

13  information and belief, Ms. Harris and DOC did nothing to address Dr. Bruner's concerns.

14          3.42    When Dr. Bruner attempted to communicate directly with Ms. Schuiteman about

15  her false reports and accusations, Ms. Schuiteman told Dr. Bruner that she did not care whether

16  the accusations were true or not and told Dr. Bruner that she felt that he was "defensive."

17          3.43    Ms. Schuiteman's behavior, encouraged and enabled by Ms. Harris and others at

18  DOC, continued unabated. She solicited false information from employees with the aim of

19  creating yet another false/fabricated complaint against Dr. Bruner. This was again done with

20  the aim and intention of harassing Dr. Bruner, undermining him, freezing him out, and forcing

21  him to quit. That is, Ms. Schuiteman was seeking to create a situation where Dr. Bruner would

22  quit without availing himself of the procedural protections that accompanied his job.

23          3.44    Ms. Schuiteman did, indeed, construct another complaint against Dr. Bruner.

24  This fabricated complaint, supported and aided by the other Defendants, created the pretext that

25  Ms. Schuiteman and Ms. Harris were looking for. Ms. Harris then sidelined and marginalized

COMPLAINT: 12

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICES CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

01897185.3 8/18/20

1   Dr. Bruner by making him report each day to HR, where he could not perform his job duties.

2   This sidelining was to last until the "investigation" was completed.  All the while, on

3   information and belief, Dr. Bruner's complaints and reports about Ms. Schuiteman's

4   misconduct were ignored.  On information and belief, Dr. Bruner's complaints were, in fact,

5   intentionally ignored and discounted by, among other people, Ms. Harris.

6       3.45    While DOC told Dr. Bruner that it would expeditiously conduct its investigation

7   into the Schuiteman-created complaint, the investigation dragged on.  And it did so in a manner

8   that intentionally damaged Dr. Bruner's reputation and compromised all of his working

9   relationships at DOC.  Defendants acted in a way that eventually made clear to Dr. Bruner that

10   they were seeking to ruin his reputation, destroy his professional status, and embarrass him.  On

11   information and belief, this was caused by Defendants' (including Ms. Harris') desire to force

12   Dr. Bruner to quit so that, *inter alia*, the status quo could continue under Ms. Schuiteman and

13   others at the Sex Offender Treatment Program at AHCC.  It was also caused by Defendants'

14   desire to have Dr. Bruner quit without DOC pursuing the process necessary to terminate his

15   employment—because any legitimate inquiry into Dr. Bruner could not possibly justify his

16   termination.

17       3.46    Ms. Harris created an environment and situation in which Dr. Bruner's

18   reputation was repeatedly damaged without justification and which made it impossible for Dr.

19   Bruner to work with his colleagues.  She then sidelined him so and prevented him from doing

20   his job duties during an investigation that was never-ending.  Indeed, the "investigation" never

21   finished.  The investigation of Dr. Bruner's complaints about Ms. Schuiteman never even

22   started.

23       3.47    As a result of the continuous and ongoing harassment, misconduct, and

24   protracted investigation set into motion by Ms. Schuiteman, Ms. Harris, and the other

25   Defendants, Dr. Bruner experienced stress, anxiety, and duress.  He was concerned about the

COMPLAINT: 13

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

constant false allegations that were made about him, the harm done to his reputation, the hostile work environment created by Ms. Harris, Ms. Schuiteman, and Mr. Smith, and the fact that Defendants' actions prevented from doing his job.  In other words, the actions of Defendants created an intolerable situation for Dr. Bruner.  As a result, he felt compelled to resign from his position.  His last day of employment at DOC was September 29, 2017.

3.48    Dr. Bruner's resignation was the goal that Defendants—particularly Ms. Harris and Ms. Schuiteman—sought to accomplish.  This way, they were able to freeze out and silence Dr. Bruner without having to go through termination proceedings to which Dr. Bruner was entitled (and which would have revealed Defendants' own wrongdoing).  In other words, in forcing Dr. Bruner to quit, Defendants were motivated by a desire to force out Dr. Bruner while also avoiding any pre-termination proceedings or other prerequisites that they would have been required to follow if they had sought to terminate his employment.

3.49    Dr. Bruner suffered both economic and non-economic damages as a result of Defendants' actions.

## IV. CAUSES OF ACTION

### A.  FIRST CAUSE OF ACTION: DUE PROCESS VIOLATIONS OF PLAINTIFFS' PROPERTY INTEREST IN EMPLOYMENT UNDER 42 U.S.C. § 1983 (Plaintiffs Tombari and Bruner Against Individual Defendants)

4.1    Plaintiffs re-allege the preceding paragraphs as though fully set forth herein.

4.2    Plaintiffs were state/public employees working at DOC in the Sex Offender Treatment and Assessment Program and each had a property interest in their employment as state/public employees.  Moreover, each Plaintiff had a property interest that was entitled to due process protections.

4.3    Individual Defendants were all state/public employees acting under color of state law.

COMPLAINT: 14

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

01897185.3 8/18/20

1    4.4    Through the conduct described above, the Individual Defendants created

2    working conditions that were intolerable to Plaintiffs in order to force them to resign.  That is,

3    Individual Defendants constructively discharged Plaintiffs.  In so doing, they were motivated

4    by, *inter alia*, a desire to avoid pre-termination procedures and other due process protections to

5    which Plaintiffs were entitled.  As a result, the Individual Defendants denied Plaintiffs their

6    procedural due process rights, in violation of their Fifth and Fourteenth Amendment rights

7    under the United States Constitution and 42 U.S.C. § 1983.

8    4.5    Through the conduct described above, Plaintiffs were unconstitutionally denied

9    their substantive due process rights, in violation of their Fifth and Fourteenth Amendment

10    rights under the United States Constitution and 42 U.S.C. § 1983.

11    4.6    Through the conduct described above, Individual Defendants, independently and

12    in concert, did intentionally and/or knowingly act to deprive Plaintiffs of their procedural and

13    substantive due process rights, in violation of their Fifth and Fourteenth Amendment rights

14    under the United States Constitution and 42 U.S.C. § 1983.

15    4.7    Due to the Individual Defendants' conduct, Plaintiffs suffered economic and

16    non-economic damages in amounts to be proven at trial.

17    4.8    Plaintiffs are entitled to recover their reasonable attorney fees, costs, and

18    disbursements pursuant to 42 U.S.C. § 1988.

19    **B.  SECOND CAUSE OF ACTION: WRONGFUL DISCHARGE IN VIOLATION**
20    **OF PUBLIC POLICY**
      **(Plaintiff Tombari Against All Defendants)**

21    4.9    Plaintiff Ms. Tombari re-alleges the preceding paragraphs as though fully set

22    forth herein.

23    4.10    The public policy of the State of Washington, with regard to conduct alleged

24    herein, provides but is not limited to, protecting employees who are discharged in retaliation for

25

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

COMPLAINT: 15

01897185.3  8/18/20

1  reporting employer misconduct that (1) violates the law, (2) is an abuse of authority, (3) is a

2  substantial and specific danger to the public health or safety, or (4) is a gross waste of public

3  funds.  See RCW 42.40.020(3).

4      4.11    Plaintiff Tombari made reports of violations of one or more of the public

5  policies set forth above to the DOC, Ms. Schuiteman, Mr. Smith, and Ms. Harris.  Plaintiff

6  Tombari's reports were directly in the service and enforcement of such public policies.

7  Following those reports, Plaintiff Tombari was retaliated against, suffered reprisals and was

8  constructively discharged from employment after Defendants made Plaintiff Tombari's

9  working conditions intolerable.  Plaintiff Tombari's reports of violations of public policy were

10  a substantial and/or a motivating factor for such retaliation, reprisals, and constructive

11  discharge.

12      4.12    As a direct and proximate result of the conduct of Defendants, Plaintiff Tombari

13  has been damaged and injured in an amount to be proven at trial.

14  **C.  THIRD CAUSE OF ACTION: OUTRAGE / INTENTIONAL INFLICTION OF**
    **EMOTIONAL DISTRESS**
15  **(Plaintiff Tombari Against All Defendants)**

16      4.13    Plaintiff Ms. Tombari re-alleges the preceding paragraphs as though fully set

17  forth herein.

18      4.14    Defendants' conduct toward Ms. Tombari was extreme and outrageous,

19  intentional and/or reckless.

20      4.15    Defendants' conduct was the proximate cause of Ms. Tombari suffering severe

21  emotional and mental anguish and distress that had objective symptoms and manifestations,

22  including, but not limited to, physical illness, nightmares, insomnia, extreme fatigue, abnormal

23  weight gain and weight loss, anxiety, hypervigilance, panic attacks, migraines, back pain, and a

24  weakened immune system.

25

COMPLAINT: 16

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

01897185.3  8/18/20

4.16    As a direct result of the Defendants' intentional infliction of emotional distress or outrage, Ms. Tombari has been damaged in an amount to be proven at trial.

## D.  FOURTH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff Tombari Against All Defendants)

4.17    Plaintiff Ms. Tombari re-alleges the preceding paragraphs as though fully set forth herein.

4.18    Defendants owed a duty to Ms. Tombari under Washington law to refrain from conduct that would unreasonably inflict emotional distress upon her.

4.19    Defendants breached this duty.

4.20    Defendants' conduct was the proximate cause of Ms. Tombari suffering emotional distress that had objective and severe manifestations and symptoms, including, but not limited to, physical illness, nightmares, insomnia, extreme fatigue, abnormal weight gain and weight loss, anxiety, hypervigilance, panic attacks, migraines, back pain, and a weakened immune system.  Ms. Tombari sought medical treatment for this emotional distress. Defendants' conduct was not done in furtherance of legitimate work-related topics.

4.21    Ms. Tombari was a foreseeable plaintiff because Defendants' conduct was directed toward her.

4.22    As a direct result of Defendants' actions, Ms. Tombari suffered damages in an amount to be determined at trial.

## V. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment as follows:

1.    For a judgment in favor of Plaintiffs in an amount to be proven at trial.

2.    That the judgment entered herein bear interest at the legal rate.

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

COMPLAINT: 17

01897185.3  8/18/20

1         3.      For attorneys' fees and costs as permitted by applicable statutes, court rules,

2 and/or case law, including but not limited to 42 U.S.C. § 1988.

3         4.      For any other relief that may be just and permitted by law.

4

        DATED this 18th day of August, 2020.

5

6                       LUKINS & ANNIS, P.S.

7

8                 By _____
                     MICHAEL A. MAURER, WSBA # 20230

9                      CHARLES HAUSBERG, WSBA # 50029
                     COURT A. HALL, WSBA # 54016

10

                     Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT: 18

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

01897185.3 8/18/20