FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 10, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANTONIA TOMBARI, and individual, and TROY BRUNER, an individual,<br><br>    Plaintiffs,<br><br>    v.<br><br>STATE OF WASHINGTON, by and through the WASHINGTON STATE DEPARTMENT OF CORRECTIONS, a Washington State Agency; CATHI HARRIS, and individual; JIM RILEY, an individual; MEGAN SMITH, an individual; RENEE SCHUITEMAN, an individual; and KRISTOPHER SMITH, an individual,<br><br>    Defendants. | No. 2:20-CV-00336-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 58. A hearing on the motion was held on February 7, 2023, by videoconference. Plaintiffs were represented by Courtney A. Hall and Michael Mauer. Defendants were represented by Nicholas R. Ulrich. After hearing argument from counsel, the Court took the matter under advisement.

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1**

**Facts**

This is a wrongful termination employment case brought by two former employees who worked for a short time at Airway Heights Correctional Center ("AHCC"). Plaintiff Dr. Troy Bruner started working at the Sex Offender Treatment Assessment Program (SOTAP) as a Psychologist at AHCC in December 2016, and resigned in September 2017. As the psychologist for the Unit, Plaintiff Bruner was on the leadership team and reported to Defendant Cathi Harris, the statewide director of SOTAP. Defendant Renee Schuiteman was the program manager of SOTAP.

According to Plaintiff Bruner, Defendant Schuiteman did not want Defendant Harris to hire him and after he was hired, she began making false reports about him to Defendant Harris, including false reports about alleged work performances issues. Plaintiff Bruner repeatedly told Defendant Harris that the reports were false, however, she did nothing to look into the reports or make them stop.

According to Defendants, Plaintiff Bruner was being investigated for possible sexual harassment toward other employees (due to an off-color joke made at a happy hour). While the investigation was underway, it was reported that Plaintiff made an inappropriate sexual comment to the program's intern. Rather than respond to the investigation report, Plaintiff chose to resign.

During the investigation, Plaintiff Bruner was not allowed to work. He was instructed that he could have no contact with anyone during the investigation. The investigation lasted months and Plaintiff was not told when it would be completed. Eventually when the investigation was completed, Plaintiff was not allowed to return to or have contact with anyone at SOTAP. According to Plaintiff, he resigned because he believed that the investigation was a sham process.

Plaintiff Antonia Tombari started working with the Department of Corrections as a sex offender treatment specialist in May 2017. When Plaintiff

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2**

Tombari started working at SOTAP, she was on "probationary" status under the collective bargaining agreement ("CBA") between DOC and the Teamsters Local Union 117.

On January 12, 2018, Plaintiff Tombari filed a complaint of workplace discrimination. She alleged she was discriminated against based on her race, age, color, sex/sexual orientation, gender/gender express/gender identity, sexual harassment, and disability. She also accused Defendants of creating a toxic work environment and believed she was being bullied and harassed. Plaintiff Tombari resigned from her position in March 2018. She began working for Frontier Behavior Health shortly thereafter.

Plaintiffs initiated their lawsuit against Defendants in Spokane County Superior Court. Defendants removed the action to the Eastern District of Washington on September 18, 2020. In their Complaint, they each brought a claim for violation of their due process property right in continued employment under 42 U.S.C. § 1983. Plaintiff Tombari is also asserting three separate state law claims: (1) wrongful discharge in violation of public policy (retaliation), (2) outrage/intentional infliction of emotional distress, and (3) negligent infliction of emotional distress.

## Collective Bargaining Agreement

Employees of the AHCC were subject to a Collective Bargaining Agreement. Pertinent parts of the CBA include:

15.5  Permanent Status
An employee will attain permanent status in a job classification upon his/her successful completion of a probationary, trial service, or transition review period.

15.7 Review Periods
    A.  Probationary Period
        1.  Length of Probationary Period
Every part-time and full-time employee, following his/her initial appointment to a permanent position will serve a probationary period.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3**

Employees initially appointed into the following job classifications will serve a twelve (12) month probationary period due to the need to complete job-specific training programs:

        a. Correctional Officer;

        b. Classification Counselors;

        c. Correctional Mental Health Counselors;

        d. Sex Offender Treatment Specialists; and

        e. All Health Services classifications.

All other newly hired employees will serve a six (6) month probationary period.

***

### 5.  Separation

The Employer may separate a probationary employee at any time during the probationary period. The Employer will provide the employee five (5) working days written notice prior to the effective date of the separation. However, if the Employer fails to provide five (5) working days' notice, the separation will stand and the employee will be entitled to payment of salary for five (5) working days, which time the employee would have worked had notice been given. Five (5) working day notice deficiencies will not result in an employee gaining permanent status.

### 6.  Separation Review

The separation of a probationary employee will not be subject to the grievance procedure in Article 9. However, the employee may request and will receive a review of the separation by the Secretary or designee. The review request must be submitted to the DOC Headquarters Labor Relations Office within fourteen (14) calendar days from the effective date of the written separation notice. This request, however, will not act as a suspension of the designated separation date.

### Motion Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4**

genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### Discussion

**1.    Section 1983 Due Process Claim - Property Right**

A discharged employee may assert procedural due process rights under the Fourteenth Amendment of the U.S. Constitution if they establish that a property interest in the state position existed. *Portman v. Cnty. of Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1991). A property interest does not exist unless the employee has a "legitimate claim of entitlement" to the public job. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Courts should look to the contract of employment and to state law to determine if there are any rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Id*. Alternatively, a plaintiff may establish a property interest by showing mutually explicit understandings or common practices and agreements derived from the employer-employee relationship which would create a sufficient expectancy of continued

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5**

employment to merit some due process. *Perry v. Sindermann*, 408 U.S. 593, 600-603 (1972).

"A section 1983 claim based upon procedural due process ... has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Portman* 995 F.2d at 904.

## A. Plaintiff Antonia Tombari

It is undisputed that Plaintiff Antonia Tombari was on probationary status at the time she left her employment at AHCC.

If employment is at-will, a plaintiff does not have a property interest in the job. *Armstrong v. Reynolds*, 22 F.4th 1058, 1067 (9th Cir. 2022). Stated another way, if an employee can be fired for any reason at any time, at most the employee has a unilateral expectation of continued employment, which is not enough to establish a property interest. *Id.* On the other hand, "[i]f discharge can only be for 'just cause,' an employee has a right to continued employment until there is just cause to dismiss him." *Id*. If state law restricts the grounds on which an employee may be discharged in a way that a probationary employee could have a reasonable expectation of continued employment, the probationary employee has a constitutionally protected property interest in the position. *Palm v. Los Angeles Dep't of Water and Power*, 889 F.3d 1081, 1085 (9th Cir. 2018) (quotation omitted).

While Plaintiff insists there are genuine issue of material fact regarding whether she has a property interest, generally this question is answered by reviewing a contract or state law to determine whether the employee had a legitimate expectation of continued employment. Notably, Plaintiff has not alleged that there is a custom, unwritten policy or practice that goes beyond the CBA to show that she has a property interest in her continued employment at AHCC. As such, the Court finds that there are not genuine issues of material fact that would

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6**

need to be decided by a jury before the Court can determine whether the CBA created a property interest.

Pursuant to the CBA, it is clear that as a probationary employee Plaintiff does not have a legitimate expectation of continued employment. Up to the time that Plaintiff completed the probationary period, she could be terminated at any time and for any reason.[1] And Plaintiff was never terminated, rather she resigned from her position.

Plaintiff argues that Section 6 of the CBA, which provides for separation review, creates a property interest. The Court disagrees. As a matter of law, the Court finds the ability to request a review of the separation decision does not provide a constitutional property interest in continued employment. At best, during the review process the employee would be in the same position they would have been when they applied for the position—namely they would be trying to convince AHCC to hire, or in this case to continue employment. Clearly, an *applicant* to a state employment opportunity does not have a legitimate expectation of continued employment, or stated another way, a constitutional property interest. Under either scenario—applying for a position or asking for a review of a termination decision while on probationary status—the decision is left to the discretion of AHCC and as such, does not provide Plaintiff with a property interest. *See Dorr v. Butte Cnty.*, 795 F.2d 875, 878 (9th Cir 1986 ("The power of the appointing authority to determine, on a purely subjective basis, whether a probationary employee has performed satisfactorily undercuts any expectation of continued employment that might otherwise arise by virtue of the requirement that disciplinary dismissal be

---

[1]While Defendants are prohibited from terminating Plaintiff for unlawful purposes, such as discrimination based on a protected class, or retaliation, such a claim would be brought under a different statue, such at Title VII, and not as a due process property interest claim.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7**

grounded upon objectively reasonable cause."). Under Plaintiff's theory, all probationary employees who are subject to the CBA would have a property interest after their first day of employment. It is clear this was not the intent or bargained for benefit of the CBA.

Because Plaintiff does not have a property interest as a matter of law, she cannot successfully bring a § 1983 violation of her due process claim, and summary judgment is appropriate.

**B.    Plaintiff Troy Bruner**

The parties agree that Plaintiff Troy Bruner has a property interest in his employment, that is, he had a legitimate expectation of continued employment at AHCC.

Plaintiff argues he was constructively discharged and as a result his due process rights were violated. Plaintiff cites to a Fifth Circuit case which held a constitutional violation based on constructive discharge may be shown in a narrow range of cases where an employee confronts an either/or termination proposition and it can be said that the state agency's motive was to avoid providing a predetermination remedy. *See Fowler v. Carrolton Pub. Library*, 799 F.2d 976 (5th Cir. 1986). Plaintiff also cited to a Tenth Circuit case which held that a due-process constructive-discharge claim can be based on the employer's intentionally or knowingly creating working conditions so intolerable that a reasonable employee would quit. *Lauck v. Campbell Cnty*, 627 F.3d 805, 812 (2010). The Tenth Circuit went on to say that an employer cannot circumvent the due-process requirements that would attend a true firing by trying to compel a resignation in a manner that violates the employee's property rights.

The Ninth Circuit has also addressed this question in a case that is seemingly on-point. *See Huskey v. City of San Jose*, 204 F.3d 893 (9th Cir. 2000). There, it was undisputed that the plaintiff had a property interest in his job, and he resigned from his position. The plaintiff argued, however, that he was deprived of his

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8**

property interest in his job because his resignation was the result of a constructive discharge. *Id*. at 900. The Ninth Circuit instructed that to support a claim of constructive discharge under § 1983, the plaintiff must show that there are triable issues of fact as to whether a reasonable person in their position would have felt that they were forced to quit because of intolerable and discriminatory working conditions. *Id*. An isolated incident of mistreatment is not enough. *Id*. The Circuit went on provide examples of situations that did not rise to the level of a constructive discharge. *Id*. at 900-902. Ultimately, the Circuit held that while normally the question of whether working conditions are so intolerable as to justify a reasonable employee's decision to resign is a factual question for the jury, courts can rely on Circuit precedent to find that an employee's allegations were insufficient as a matter of law. *Id*. at 900.

Similarly, in this case when viewing the facts in the light most favorable to the Plaintiff, the non-moving party, and relying on the guidance provided by the Ninth Circuit, the Court finds that a reasonable jury would not find that the working conditions facing Plaintiff Bruner were so intolerable that a reasonable person would feel forced to resign. As such, Plaintiff Bruner cannot show that his due process rights were violated, and summary judgment as a matter of law is appropriate.

**2.    Remaining State Law Claims**

A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Here, the Court has granted summary judgment on Plaintiffs' federal claims. The Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims and will remand those claims back to Spokane Superior Court.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9**

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment, ECF No. 58, is **GRANTED**.

2. The District Court Executive is directed to enter judgment in favor of Defendants and against Plaintiff with respect to the Due Process claims.

3. The Court **remands** Plaintiff's state law claims back to Spokane County Superior Court.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, and **close** the file.

**DATED** this 10th day of February 2023.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 10